UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHARI R.,

                Plaintiff,

       v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

No.   2:17-CV-00284-SMJ

**ORDER RULING ON MOTIONS
FOR SUMMARY JUDGMENT**

Plaintiff Shari R. appeals the Administrative Law Judge's (ALJ) denial of her application for Supplemental Security Income benefits. She alleges that the ALJ (1) erroneously rejected medical opinions, (2) improperly discredited Rhyne's testimony, and (3) the improperly found that the Commissioner's burden at step five was met. The ALJ properly weighed the opinion testimony but failed to properly identify representative occupations that Plaintiff could perform with her residual functional capacity that exist in substantial numbers in the national economy. As a result, the case is remanded to the Social Security Administration for additional proceedings consistent with this order.

# I.    BACKGROUND[1]

Plaintiff filed an application for Supplemental Security Income (SSI) on August 26, 2011, alleging disability beginning May 13, 2011. AR 143, 151. Her claim was denied initially and upon reconsideration. AR 89, 98. Plaintiff received an unfavorable decision on October 26, 2012. AR 17–43. Plaintiff sought review of the final administrative decision from this Court. AR 691–93. On November 12, 2015, the Court remanded the matter for additional proceedings under sentence four of 42 U.S.C. 405(g). AR 711. On December 31, 2015, the Appeals Council remanded the case for a rehearing consistent with the order of this Court. AR 718.

On September 9, 2016, a hearing was held before ALJ R. J. Payne. AR 589. In a decision filed on June 12, 2017, the ALJ issued an unfavorable decision. AR 575. The Appeals Council did not assume jurisdiction of the case, and the ALJ's June 2017 decision became the final decision of the Commissioner after the Court's remand. 20 C.F.R. § 416.1484(a). Plaintiff now seeks review of the ALJ's June 2017 decision.

# II.    DISABILITY DETERMINATION

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other

substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### III.   ALJ FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 26, 2011. AR 561. At step two, the ALJ concluded that Plaintiff had the following medically determinable severe impairments: bilateral hip dysplasia/bursitis, arthralgias/fibromyalgia, obesity, depressive order, borderline intellectual functioning, post-traumatic stress disorder, and substance use disorder. *Id.* The ALJ noted that Plaintiff had complaints of abdominal pain, COPD, and carpal tunnel syndrome, but found that none of these conditions were severe impairments. AR 16. The ALJ noted that Plaintiff's records reflected hyperlipidemia, hypertension, sinusitis, and vitamin D deficiency, lower back pain, gastroesophageal reflux disease, closed left ankle fracture, and conversion disorder. However, the ALJ found that these did not constitute severe impairments.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR 565. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform a range of sedentary work as defined in 20 C.F.R. 416.967(a). The ALJ imposed the following limitations: the claimant can lift no

more than 10 pounds at a time occasionally and lift or carry less than 10 pounds frequently; can sit for 6 hours and stand and walk 2 hours in an 8-hour workday with normal breaks; can occasionally can climb ramps/stairs, stoop, crouch, kneel, crawl, balance, but cannot climb ladders, ropes, and scaffolds; needs to avoid concentrated exposure to heavy industrial-type vibration; and no working at unprotected heights. Mentally, the claimant is able to understand, remember, and carry out simple routine work tasks; is restricted to low stress level work (e.g., not fast-paced work, strict production and quota type work, managerial work, independent decision-making, or work requiring more than simple work place judgments); and no memorization of visual information in conjunction with a job. AR 566–67. In reaching this conclusion, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but he found that some of Plaintiff's statements concerning the intensity, persistence and limiting effects were not entirely credible. AR 567–71.

In determining Plaintiff's physical capacity, the ALJ gave great weight to the opinions of reviewing physicians Nancy Winfrey and Reuben Beezy. AR 25. The ALJ gave partial weight to the opinions of examining physician William Drenguis and reviewing physicians Guthrie Turner and Gordon Hale. The ALJ also gave partial weight to the opinion of reviewing physician Ivan Reveron. The ALJ gave minimal weight to the opinion of Plaintiff's treating physician, Jill

Simon. AR 571. The ALJ also gave little weight to the opinions of ARNP Kristine

Kehler and DSHS reviewing physicians Myrna Palasi and Brent Packer. AR 572.

At step five, the ALJ found that Plaintiff is unable to perform any past

relevant work and that there are jobs that exist in significant numbers in the

national economy that Plaintiff could perform. AR 574–75.

## IV.   STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not

disabled if the ALJ applied the proper legal standards and there is substantial

evidence in the record as a whole to support the decision. *Molina v. Astrue,* 674

F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th

Cir.1985)). "Substantial evidence 'means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This

must be more than a mere scintilla, but may be less than a preponderance. *Id.* at

1110–11 (citation omitted). Even where the evidence supports more than one

rational interpretation, the Court must uphold an ALJ's decision if it is supported

by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d

577, 579 (9th Cir. 1984).

# V.    ANALYSIS

## A.    The ALJ properly weighed the medical opinion evidence.

Plaintiff argues that the ALJ failed to adequately consider the opinions of treating physician Dr. Jill Simon and reviewing physician Dr. Brent Packer. ECF No. 15 at 9–16. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a nonexamining physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.*

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d 821, 830–31).

### 1. Dr. Jill Simon.

Plaintiff argues that the ALJ erred in assigning the medical opinion evidence of Dr. Simon little weight. ECF No. 15 at 10. Dr. Simon evaluated Plaintiff on several occasions for her chronic pain issues. AR 232, 244, 306–07, 309, 492–93. On December 7, 2011, Dr. Simon completed a medical report questionnaire. AR 250–51, 306–07. Dr. Simon opined that Plaintiff could perform only sedentary work and further opined that Plaintiff was disabled. However, due to a minimal medical findings, disparate exam results, and Plaintiff's escalating emotional state, Dr. Simon opined that Plaintiff's disability was "much more a psychiatric issue than a physical issue." AR 307. Dr. Simon evaluated Plaintiff in March 2012. At that point, Plaintiff had been diagnosed with fibromyalgia by rheumatologist Dr. Byrd. AR 496. Dr. Simon opined that Plaintiff was disabled due to the combination of fibromyalgia and how Plaintiff processed the experience of pain. AR 498.

Dr. Simon's opinion is contradicted by the opinions of Dr. Drenguis, Dr. Winfrey, and Dr. Beezy, who each found that Plaintiff was capable of work with

certain physical and cognitive limitations. The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). However, the opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831. Accordingly, the ALJ must identify other substantial evidence in the record to discredit Dr. Simon's opinions. *Bayliss*, 427 F.3d at 1216.

The ALJ met its burden by providing sufficient reasons supported by substantial evidence in the record to discredit Dr. Simon's opinions. Specifically, the ALJ noted that Dr. Simon's restrictions were not supported by the objective medical findings. The ALJ observed that Dr. Simon "puzzled over the varying clinical findings and the absence of evidence for a cause of the alleged pain." AR 572. Although perhaps stated with less than perfect clarity, the ALJ's opinion highlights that Dr. Simon's conclusions are internally inconsistent and at odds with the record as a whole. In her March 2012 evaluation, Dr. Simon stated that there was a "paucity of findings on any studies to account for . . . what has been an increasingly dramatic presentation" of symptoms. AR 538. Dr. Simon went on to conclude that she believed Plaintiff was "disabled from her issue at this time,

from a standpoint of fibromyalgia to a degree, but more from the emotional state/mental process that has resulted from her experience of her pains." *Id.* In making this conclusion, Dr. Simon did not explain how Plaintiff's fibromyalgia limited her ability to work and emphasized that the larger issue came from Plaintiff's unspecified problems with processing pain. The inconsistency between Dr. Simon's check-box conclusions, her narrative, and the medical record as a whole constitutes substantial evidence supporting the ALJ's determination to assign little weight to Dr. Simon's conclusions.

### 2. Dr. Brent Packer

In June 2014, Dr. Packer completed a Review of Medical Evidence for DSHS. Dr. Packer indicated that he agreed that the diagnosis of hip dysplasia was supported by objective medical evidence, but that he believed the severity and functional limitations were more severe than diagnosed:

> Recommend change to less than sedentary highest work activity. [Claimant] is unable to [stand with] even brief periods. Lifting 10/10. [Claimant's] leg length discrepancy imitating findings and pain are fully credible, but undertreated per notes. Hip replacement is contemplated by Dr. Byrd although deferred due to young age. FM and possible RLE radiculopathy discussed in recent notes would be additive to pain and ambulatory impairment. Recommend benefit to [Claimant] for combined impairments and pain; severity approaches level required by SSA listing 1.02A

The ALJ assigned this opinion "little weight" because "the document fails to provide an explanation for the conclusions with recitation of objective medical

findings." AR 572. This is a sufficient reason to reduce the weight accorded to Dr. Packer's assessment. Although Dr. Packer stated that Plaintiff is unable to stand for even brief periods, he cited no evidence in Plaintiff's medical record to support this conclusion. Likewise, he cited potential radiculopathy as an additional cause of Plaintiff's pain, but did not cite any medical findings to support this conclusion. Accordingly, the ALJ did not err by according Dr. Packer's opinion little weight.

**B.     The ALJ did not err in weighing other source testimony.**

An ALJ may consider "other source" testimony from sources such as nurse practitioners, physicians' assistants, and counselors. 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his or her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 13 F.3d 915, 918–19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, the ALJ must provide "reasons that are germane to each witness" and may not simply categorically discredit the testimony. *Id.* at 919.

**1.     Kristine Kehler, ARNP**

In July 2013, ARNP Kehler completed a DSHS form in which she found Plaintiff's work function was impaired and that Plaintiff could sit for most of the day and walk or stand for brief periods. In June 2014, Kehler indicated Plaintiff could perform light work and that her hip and fibromyalgia pain affected her

sitting, standing, walking, and handling to moderate to marked levels. She also indicated that Plaintiff's mental impairments affected her ability to understand and follow directions, see, and communicate. AR 1022–28, 1604. On another form completed in June 2014, Kehler found Plaintiff could perform light work with occasional pushing and pulling of her arms and legs. AR 1034–35. In March 2016, Kehler again found Plaintiff could do light work. AR 1253. In September 2016, Kehler indicated Plaintiff would need to lie down during the day and that work would cause her condition to deteriorate. She further estimated Plaintiff would be absent from work four or more times per month. AR 1400–01.

The ALJ assigned Kehler's opinion "little weight." AR 572. In so doing, the ALJ noted that other medical reports did not support the conclusion of extensive absences from work, an inability to lift more than two pounds frequently, or the need to lie down during the day. *Id.* Plaintiff argues the ALJ erred in failing to give less than full weight to Kehler's opinions.

The ALJ provided specific, germane reasons to discount Kehler's testimony. First, the ALJ noted that the opinions were unsupported by the medical record. Given the numerous notations in the record regarding Plaintiff's relatively normal range of motion and absence of clinical findings to support the symptoms she complained of, the ALJ's conclusion that Kehler's opinion lacked support is both germane and supported by the record. AR 572. These reasons are supported

by substantial evidence in the record. Accordingly, the ALJ did not err in weighing Kehler's opinion.

## B. The ALJ did not err in finding Plaintiff's symptom testimony not credible.

Plaintiff asserts that the ALJ erred by discrediting her symptom testimony. The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112. Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). General findings are insufficient. *Lester*, 81 F.3d at 834. Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.*

In making an adverse credibility determination, an ALJ may consider, among other things, (1) the claimant's reputation for truthfulness; (2)

inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Plaintiff testified that she suffered from "excruciating pain" that occurred with sitting, standing, and walking and varied from a "6" to a "9" with a "10" being the highest level of pain. AR 626–27. Plaintiff testified that she spends most of the day lying down with heating pads. She stated that she could perform household tasks, but that they took longer to perform. She further testified that she visits friends' homes and that her most recent trip was a 5 1/2-hour trip to Vancouver, Washington to visit her stepmother and two brothers. AR 632. By her report, Plaintiff had to stop 5 to 6 times during this trip. *Id.*

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 568. Nonetheless, the ALJ provided specific, clear, and convincing reasons to discount Plaintiff's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

First, the ALJ found that Plaintiff's claims were inconsistent with the medical record. This assessment is supported by substantial evidence. The ALJ cited numerous notations in Plaintiff's medical records that suggest Plaintiff's impairments were not as severe as alleged. For example, a 2011 exam noted no

significant pain with arc of motion in the hip. X-rays and MRI's showed normal soft tissue and articular structures and an absence of joint space narrowing or avascular necrosis. Another notation found that Plaintiff could walk heel/toe with good muscle strength and without significant pain.

Regarding her mental impairments, the ALJ also cited numerous reasons Plaintiff's testimony conflicted with the record. For example, in September 2011, Plaintiff's psychological assessment was normal with the exception of anxiety and stress. AR 243. An October 2011 examination showed alertness and full orientation. AR 257. In November 2011, Dr. Mark Duris, Ph.D., noted Plaintiff was cooperative with congruent and euthymic mood and affect. AR 1651. The ALJ acknowledged that Plaintiff experienced increased symptoms at times of trauma, but concluded that "this result simply appears to be a normal reaction experienced by any individual." AR 570.

The ALJ also discounted Plaintiff's testimony because she failed to follow treatment recommendations. AR 570. "The ALJ may consider many factors in weighing a claimant's credibility," including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039. The ALJ noted that in December 2011, treating physician Dr. Simon declared that Plaintiff was not compliant with her

appointments. Further, Plaintiff's physical therapist found a lack of evidence that Plaintiff completed exercises at home.

The effectiveness of treatment or medication is another relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006) (noting that "impairments that can be controlled effectively with medication are not disabling"). Here, the ALJ noted that the record showed Plaintiff's symptoms lessened with treatment. For example, Plaintiff's use of Cymbalta and Lamictal helped ease depression and irritability. AR 431, 522. Likewise, a report from a physical therapist in March 2012 noticed that Plaintiff did "extremely well." AR 551. In July 2012, Plaintiff experienced decreased pain and improved range of motion in the low back, leading to the conclusion that she was generally feeling well. AR 554.

Finally, the ALJ observed that Plaintiff's complaints were inconsistent with her daily activities. AR 571. The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). To that end, "many home activities are not easily

transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest of take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Accordingly, a claimant's daily activities should not have a negative impact on credibility unless those activities contradict the claimant's other testimony or are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, Plaintiff reported to Dr. Drenguis in February 2016 that she could go grocery shopping, perform household chores in 20-minute intervals, and care for her dogs. The record also shows that Plaintiff cared for herself by preparing her own meals, taking her prescriptions, and attending medical appointments. The ability to complete basic household chores and perform simple acts of self-care is consistent with Plaintiff's testimony regarding her pain. It is also consistent with an inability to function in a workplace environment. Accordingly, Plaintiff's daily activities are not sufficient grounds to discredit her pain-related testimony.

Although the ALJ erred in concluding Plaintiff's daily activities contradicted her pain testimony, the ALJ provided several other valid clear and convincing reasons to discredit Plaintiff's symptom testimony supported by substantial evidence in the record. The ALJ therefore did not err in making an adverse credibility finding as to Plaintiff's symptom testimony.

**C.**     **The ALJ failed to establish that jobs exist in substantial numbers in the national economy that Plaintiff could perform with her residual functional capacity.**

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite her identified limitations. *Johnson v. Shalala*, 50 F.3d 1428, 1432 (9th Cir. 1995); see also 20 C.F.R. § 416.920(g). At an administrative hearing, an ALJ may solicit vocational expert (VE) testimony as to the availability of jobs in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). A VE's testimony may constitute substantial evidence of the number of jobs that exist in the national economy. *Bayliss*, 427 F.3d at 1218. The ALJ's decision regarding the numerosity of alternative occupations must be supported by substantial evidence. *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013). The ALJ's step five findings cannot stand where "no reasonable mind could accept the employment numbers proffered by the VE as substantial evidence. *Id.* ("A reasonable mind would not accept the VE's testimony that there are 3,600 head dance hall hostess positions in the local economy and 342,000 in the national economy.").

Here, the VE testified that Plaintiff could perform the following occupations: (1) document preparer/microfilm, DOT #249.587-018, with 99,000 jobs nationally; (2) table worker, DOT #739.687-182, with 14,000 jobs nationally;

(3) waxer, DOT #779.687-038, with 7,000 jobs nationally; (4) lens inserter, DOT #713.687-026, with 29,000 jobs nationally; and (5) charge account clerk, DOT #205.367-014, with 33,000 jobs nationally. AR 645–46, 651.

The VE testified that he determined how many jobs were available in these occupations by referring to the Standard Occupational Classification (SOC). The VE explained that the SOC reports job numbers in groups of different occupations. For example, the occupational group in which document preparer/microfilm falls contains 72 different occupations. AR 649. Of those 72 occupations, the VE estimated that approximately three were sedentary. To determine job numbers for a specific occupation, the VE testified that he extrapolates from the entire occupational group. The VE confirmed that the figure of 99,000 jobs he provided for the document of document preparer/microfilm was based on the numbers of the group including all 72 occupations.

Plaintiff argues that the figures provided by the VE were incorrect because they were extrapolated from the larger SOC groups. This argument is persuasive. Given the advances in technology, it appears to this Court highly implausible that 99,000 jobs exist in the national economy for a document preparer/microfilm. That is "no reasonable mind" could believe that 99,000 individuals employed in the national economy prepare documents for microfilming as described in DOT 249.587-018. Moreover, the VE testified that he used this same method of

extrapolation to determine job numbers for each of the occupations cited. The VE did not explain how many of the positions in each of the groups matched Plaintiff's residual functional capacity. The VE's testimony regarding job numbers therefore does not constitute substantial evidence to support the ALJ's findings.

In addition, Plaintiff argues that the mental demands of some jobs identified by the VE exceeded Plaintiff's residual functional capacity. The ALJ found that Plaintiff is limited to simple, routine, low stress work. AR 567. Two of the jobs identified by the ALJ as representative occupations that Plaintiff would be able to perform require Level 3 reasoning. The ALJ did not reconcile this conflict. This was error. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). Without additional information to illuminate the ALJ's reasoning, the Court cannot determine whether substantial evidence supports the ALJ's findings that Plaintiff could perform this work. Accordingly, the ALJ's failure to recognize the conflict is not harmless.

## VI.    CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

**2.**    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**. This matter shall be **REMANDED** to the SSA for further proceedings consistent with this order.

3. The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

4. **JUDGMENT** is to be entered in the Plaintiff's favor.

5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 3rd day of July 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge